This case arose out of serious burns suffered by two boy scouts, one of whom subsequently died, when their tent caught fire during a camp-out near Hanceville, Alabama. Two volunteer scout leaders, James Hale and Curtis Kreitner, were charged with negligence in suits brought on behalf of the two boys.
This appeal involves solely questions of insurance coverage between insurers providing liability insurance for the two scout leaders. Hartford Accident and Indemnity Company (Hartford) provided liability insurance for Boy Scouts of America. The two scout leaders were covered under the Hartford policy. Each of them also had a homeowners policy providing liability coverage for the incident. Hale's policy was with State Farm Fire and Casualty Company (State Farm) and Kreitner's policy was with Alabama Farm Bureau Insurance Company (Farm Bureau).
State Farm filed an action for declaratory judgment in which it alleged that its insured, Hale, failed to give notice of an occurrence and notice of suit to State Farm as required by the terms of its policy. It also contended that Hartford had the primary duty to defend Hale and asked the court to declare that the Hartford policy provided the only coverage for claims against Hale.
Hartford filed an answer and counterclaim against State Farm in which it asserted that State Farm was obligated to defend and provide coverage for Hale; that the State Farm policy provided primary coverage for claims against Hale; and the Hartford policy provided coverage only for liability in excess of the limits of the State Farm policy. Hartford also filed a third-party complaint against Farm Bureau and its insured, Curtis Kreitner. It averred that the coverage in its policy provided for Kreitner, like Curtis, would be in excess of the coverage provided for Kreitner under the Farm Bureau policy. Farm Bureau filed answer in which it denied any coverage for its insured, Kreitner, because of his failure to give timely notice of the occurrence as provided in the Farm Bureau policy.
After a hearing on the merits, the court issued its final judgment, in which it held:
(a) The Hartford policy provided excess coverage for Hale and Kreitner;
(b) Hale gave proper notice to State Farm under the terms of the State Farm policy; and
(c) Kreitner gave proper notice to Farm Bureau under the terms of the Farm Bureau policy.
The court held, therefore, that State Farm and Farm Bureau were liable to their insured up to the limits of each policy, and that Hartford was liable for any excess.
State Farm and Farm Bureau appealed from this judgment. The issues on appeal involve the question of whether the notice provisions of the State Farm and Farm Bureau policies were complied with, whether the coverage in those policies was primary coverage, and whether Hartford waived its rights against State Farm and Farm Bureau.
The accident causing injury to the two boy scouts occurred on May 5, 1973. *Page 391 
The record indicates that Hale, State Farm's insured, first reported the accident to State Farm in the late fall of 1973. He testified that a Sears investigator told him he should contact his homeowners insurance carrier. (When suits were finally filed arising out of the fire, named defendants, among others, included the manufacturer of the tent, Sears Roebuck and Company which sold the tent, as well as Hale and Kreitner.) It was Hale's testimony that he called a Mr. Calvert, State Farm's agent, and told him about the accident. Calvert inquired as to what it had to do with his homeowners insurance. Hale said he did not know, and Calvert said he did not know either.
In January, 1974, suits were filed against Hale and others arising out of the injuries to one of the boys. Service was served on Hale in that suit on January 31, 1974. Hale gave a statement to a State Farm representative on March 12, 1974, and signed a non-waiver agreement. He gave a deposition in that suit on April 22, 1974, and was represented by an attorney retained by State Farm. When the next suit was served on him, on May 17, 1974, he called Mr. Calvert, State Farm's agent, who advised him to call State Farm's office in Birmingham. It was his testimony that he heard someone in the background say "`We won't talk to him.'" The receptionist advised him to get in touch with his lawyer. She gave Hale the telephone number of the lawyer retained by State Farm. Hale never reached this attorney by telephone and had no further contact with State Farm until he received a letter from the attorney advising him that he had no coverage under the State Farm policy because he had violated the policy provisions with regard to notice.
Kreitner, a Farm Bureau's insured, testified that he talked to a Hartford investigator not more than ninety days after the accident, and was told not to discuss it with anyone else. In July, 1974, he was told by Hartford that he should report the accident to his homeowners insurer. Kreitner was not aware that any claim would be made against him in either of the cases involving injury to the boys until June, 1974, when service of process was served on him. He then reported the accident to Farm Bureau within thirty days of service of process.
Hartford wrote to all of the individual defendants on July 19, 1974, asking for the names of their homeowners insurance carriers.
From these facts, the trial court concluded that neither Hale nor Kreitner had violated the notice provisions of their provisions:
 "(1) In the event of an accident or occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to this Company or any of its authorized agents as soon as practicable. "(2) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to this Company every demand, notice, summons or other process received by him or his representative." The counterpart in Farm Bureau's policy reads:
 "When an occurrence takes place on this coverage, notice shall be given by or on behalf of the Insured to this Company or any of its authorized agents as soon as practicable."
Our recent case of Southern Guaranty Insurance Company v.Thomas, Ala., 334 So.2d 879 (1976), authored by Justice Bloodworth, reviews prior cases on the notice issue involved here and succinctly sets out the law of this state on that subject:
 "The terms `as soon as practicable' and `immediately' . . . have been generally construed to mean that notice must be given `within a reasonable time' in view of all the facts and circumstances of the case. See, e.g., American Liberty Ins. Co. v. Soules, 288 Ala. 163, 171, 258 So.2d 872, 879 (1972); Pan American Fire Casualty Co. v. DeKalb-Cherokee Counties Gas District, 289 Ala. 206, 214, *Page 392 266 So.2d 763, 771 (1972); Annot., 18 A.L.R.2d 443, 462ff.
". . .
 "Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question of fact for the jury. Provident Life Accident Insurance Co. v. Heidelberg, 228 Ala. 682, 154 So. 809 (1934). . . .
". . .
 "It is implicit in what has been said up to this point that under Alabama law there are only two factors to be considered in determining the reasonableness of a delay in giving notice to an insurer: the length of the delay and the reasons for the delay. . . ." (334 So.2d at 882, 883).
Farm Bureau and State Farm urge us to hold as a matter of law that each of their insureds violated the notice provisions of their respective policies. The general rule, and that followed in this state, is:
 ". . . Generally the question of whether notice has been given without unnecessary and unreasonable delay is one of fact for the jury, although under proper circumstances it may become a question of law." Appleman, Insurance Law and Practice, Vol. 8, § 4734 (1962).
Whether notice was given within a reasonable time must be determined by the circumstances of each case. AllstateInsurance Company v. Fogg, 293 Ala. 155, 300 So.2d 819 (1974).
In the instant case, Mr. Hale testified that he did not know what his homeowners policy had to do with the accident which became the basis of the suit. He did not know that it provided coverage. The same was true with respect to Mr. Kreitner. He testified, also, that he did not think he was going to be sued because of the accident. Under the circumstances, we cannot hold, as a matter of law, that the notice to the insurers came too late. The trial court heard all of the evidence and concluded that, under all the circumstances of the case, notice was timely. In Stonewall Insurance Company v. Lowe, 291 Ala. 548, 284 So.2d 254 (1973), this court, speaking through Justice Faulkner, held that where the insured testified that he did not think there would be a claim filed against him arising out of an accident, the issue of timely notice was properly submitted to the jury. That case held that the test was whether the insured acted as a reasonable and prudent man under the circumstances. We cannot say, as a matter of law, that a reasonable and prudent man would have acted any differently than Mr. Hale and Mr. Kreitner did under the circumstances of this case. We affirm the trial court's judgment on this issue.
The second issue argued on appeal is whether the Hartford policy provided primary or excess coverage. The trial court held that the coverage was excess and that State Farm and Farm Bureau were the primary insurers. The Hartford policy contains the following provision:
 "If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder, except insurance purchased to apply in excess of the limit of liability hereunder, the insurance hereunder shall be in excess of and not contribute with such other insurance. If collectible insurance under any other policy(ies) of the company
is available to the insured covering a loss also covered hereunder, the company's total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies)."
Both State Farm and Farm Bureau policies contain pro-rata clauses.
The court held in Continental National American Group v.Burleson, 283 Ala. 671, 220 So.2d 611 (1969), that a policy containing a pro-rata clause is required to exhaust its policy limits before any payment is required by an "excess" policy. InBurleson, this court cited, with approval, United StatesFidelity Guaranty Co. v. Slifkin, (N.D.Ala.), 200 F. Supp. 563
(1961), which held: *Page 393 
 ". . . the overwhelming majority of the decisions from other jurisdictions have given full effect to the `excess insurance' clauses, making the insurer with the `pro rata' clause primarily liable to the full extent of its policy. . . ." (200 F. Supp. at 579)
A strikingly similar case, both on the facts and the policy provisions, was decided by the Supreme Court of Washington.General Insurance Company of America v. State Farm InsuranceCompany, 75 Wn.2d 200, 449 P.2d 391 (1969). In that case, a boy scout was injured while on an outing. Suit was brought on his behalf against the scoutmaster, at the time of the accident, General Insurance Company had in effect a policy insuring the Boy Scouts of America, Blue Mountain Council. That policy, like Hartford's, contained an excess clause. State Farm had issued a homeowners policy to the scoutmaster which contained a pro-rata clause. There, the Washington Court said the question to be determined was which insurer had the primary liability. The court held:
 "In a liability insurance policy having a `pro rata' clause, there is an expressed recognition of primary liability to the extent of the policy coverage. The `pro rata' clause becomes effective only when there is other insurance.
 "In a liability insurance policy having an `excess clause,' it is expressed that if there be other insurance, the policy does not furnish coverage unless liability exceeds the amount of the other insurance.
 "The two provisions are not repugnant." (449 P.2d at 393)
This is consistent with our holding in Burleson, supra, and the trial court so held, correctly so. Its judgment in that regard is affirmed.
The last argument made by State Farm and Farm Bureau is to assert that, even if their policies do provide primary coverage for their respective insureds, Hartford has waived its right to contribution from them because Hartford conducted the defense of the insureds. In the first place, Hartford's policy required it to defend Hale and Kreitner. It provides:
". . . the company shall:
 "(a) defend any suit against the insured alleging such personal injury or injury to or destruction of property and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;"
All three companies agree that Hale and Kreitner were insured under the Hartford policy. Hartford did what its policy obligated it to do in investigating and defending the actions against the scout leaders. By doing what it was obligated to do, it can hardly be held to have waived any provision of its policy. Again, the trial court so held, and its judgment is, therefore, due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur.